**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE,<br><br>         Plaintiff,<br><br>vs.<br><br>GENERAL REINSURANCE CORPORATION,<br><br>         Defendant. | CIVIL ACTION<br><br>NO. 16-2063-CM |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**DEFENDANT GENERAL REINSURANCE CORPORATION**
**TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE, PLAINTIFF'S**
**BAD FAITH CLAIM AND ITS CLAIMS FOR CONSEQUENTIAL**
**DAMAGES, PUNITIVE DAMAGES, AND ATTORNEYS' FEES**

---

BUDD LARNER, P.C.
260 Madison Avenue, 18th Floor
New York, New York 10016
(646) 670-5702
Attorneys for Defendant
General Reinsurance Corporation

On the brief:

    Vincent J. Proto

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ........................................................................................................1

II. ALLEGATIONS OF THE COMPLAINT...................................................................2

III. ARGUMENT ...............................................................................................................4

    A. Applicable Pleading Standards ........................................................................4

    B. The Diocese Has Failed to Allege a Claim of Insurance Bad
       Faith or Any Claim for Consequential and Punitive Damages and
       Attorneys' Fees .................................................................................................6

          1. A Bad Faith Claim Requires Factual Allegations of
             Tortious Conduct that Would Support a Punitive
             Damages Claim.................................................................................6

          2. The Diocese Alleges a Mere Coverage Dispute ..........................................9

          3. New York Law Does Not Compel the Conclusion that the
             Diocese's Loss Was Caused by a Single Accident During
             GRC's Policy Period......................................................................11

IV. CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aetna Cas. & Sur. Co. v. Dawson,*
 84 A.D.2d 708, 444 N.Y.S.2d 10 (1st Dep't 1981) ................................................. 9

*Arres v. City of Fresno,*
 2011 WL 284971 (E.D. Cal. Jan. 26, 2011) ......................................................... 5

*Astor Holdings, Inc. v. Roski,*
 No. 01-cv-1905, 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ................................... 5

*ATSI Commc'ns v. Shaar Fund, Ltd.,*
 493 F.3d 87 (2d Cir. 2007). ................................................................................ 5

*Auqui v. Seven Thirty One Ltd. P'ship.,*
 22 N.Y.3d 246, 3 N.E.3d 682, 980 N.Y.S.2d 345 (2013) ................................... 16

*Baxter v. Bristol Myers,*
 251 A.D.2d 753, 672 N.Y.S.2d 970 (3d Dep't 1998) ..................................... 3, 14

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................. 5

*Bi-Economy Market, Inc. v. Harleysville Ins. Co.,*
 10 N.Y.3d 187, 886 N.E.2d 127, 856 N.Y.S.2d 505 (2008) .............................. 7, 8

*Bichowsky v. Hickey Freeman Co.,*
 11 A.D.2d 877, 203 N.Y.S.2d 486 (3d Dep't 1960) ........................................... 13

*Bruse v. Holiday Inn,*
 16 A.D.3d 785, 790 N.Y.S.2d 765 (3d Dep't 2005) ...................................... 3, 14

*Buechel v. Bain,*
 97 N.Y.2d 295, 766 N.E.2d 914, 740 N.Y.S.2d 252 (2001) ............................... 16

*Chase Manhattan Bank v. Each Individual Underwriter,*
 258 A.D.2d 1, 690 N.Y.S.2d 570 (1st Dep't 1999) .............................................. 9

*Clark-Fitzpatrick, Inc. v. LIRR,*
 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987) ................................. 7

*D'Arata v. New York Cent. Mut. Fire Ins. Co.,*
 76 N.Y.2d 659, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990) ................................. 15

*Erazo v. Brandlers Bakery,*
 22 A.D.2d 718, 253 N.Y.S.2d 186 (3d Dep't 1964) ........................................... 13

*Estee Lauder, Inc. v. OneBeacon Ins. Group, L.L.C.*,
    31 Misc. 3d 379, 918 N.Y.S.2d 825 (Sup. Ct. N.Y. Cty. 2011) ............................... 9

*Flores-King v. Encompass Ins. Co.*,
    29 A.D.3d 627, 818 N.Y.S.2d 221 (2d Dep't 2006) ...................................... 7

*Hargett v. Metro. Transit Auth.*,
    552 F. Supp. 2d 393 (S.D.N.Y. 2008) ............................................... 5

*Harris v. Provident Life & Accident Ins. Co.*,
    301 F.3d 73 (2d Cir. 2002) ......................................................... 6

*Hartford Acc. & Indem. Co. v. Michigan Mut. Ins. Co.*,
    61 N.Y.2d 569, 462 N.E.2d 608, 475 N.Y.S.2d 267 (1984) ............................... 16

*Int'l Rehabilitative Sciences Inc. v. Gov't Employees Ins. Co.*,
    No. 12-cv-1225A, 2014 U.S. Dist. LEXIS 161436 (W.D.N.Y. Aug. 5, 2014) ............... 6, 7, 8

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007) ...................................................... 5, 10

*Johannesen v. New York City Dep't of Hous. Preervation & Dev.*,
    84 N.Y.2d 129, 638 N.E.2d 981, 615 N.Y.S.2d 336 (1994) ............................... 12

*Kenford Co. v. County of Erie,*
    73 N.Y.2d 312, 537 N.E.2d 176, 540 N.Y.S.2d 1 (1989) ................................. 7

*Kaiser Found. Hosps. v. N. Star Reinsurance Corp.*,
    90 Cal. App. 3d 786 (1979) ....................................................... 16

*KSW Mech. Servs., Inc. v. Am. Prot. Ins. Co.*,
    40 A.D.3d 709, 835 N.Y.S.2d 703 (2d Dep't 2007) ...................................... 7

*Lawton v. Port of N.Y. Auth.*,
    276 A.D. 81, 92 N.Y.S.2d 714 (3d Dep't 1949) ...................................... 13

*Lumsden v. Despatch Shops, Inc.*,
    5 A.D.2d 242, 171 N.Y.S.2d 189 (3d Dep't 1958) .................................... 12, 13

*Marzan v. Liberty Mut. Ins. Co.*,
    No. 151184/2013, 2014 WL 3924623 (Sup. Ct. N.Y. Cty. Aug. 8, 2014) ................... 8

*Matter of Juan C. v. Cortines,*
    89 N.Y.2d 659, 679 N.E.2d 1061, 657 N.Y.S.2d 581 (1997) .............................. 16

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
    47 N.Y.2d 12, 389 N.E.2d 1080, 416 N.Y.S.2d 559 (1979) ............................... 8, 9

*In re NYSE Specialists Sec. Litig.*,
    No. 06-cv-1038, 503 F.3d 89, 2007 WL 2701341 (2d Cir. Sept. 18, 2007) ................ 7, 8, 9

*New York Univ. v. Cont'l Ins. Co.,*
    87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) ........................... 6, 7, 8

*Price v. Park Ave. Plaza Owner L.L.C.,*
    2013 WL 425264 (Sup. Ct. N.Y. Cty. Jan. 17, 2013) ......................................... 17

*Ripka v. Safeco Ins.,*
    No. 14-cv-1442, 2015 WL 3397961 (N.D.N.Y. May 26, 2015) .......................... 8

*Rocanova v. Equitable Life Assur. Soc'y,*
    83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994) ............................. 6, 7

*Ryan v. New York Tel. Co.,*
    62 N.Y.2d 494, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984) ............................... 15

*San Francisco BART Dist. v. Gen. Reinsurance Corp.,*
    111 F. Supp. 3d 1055 (N.D. Cal. 2015) ............................................................ 16

*In re Scottish Re Group Sec. Litig.,*
    524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...................................................... 4, 5, 10

*Seippel v. Jenkens & Gilchrist, P.C.,*
    341 F. Supp. 2d 363 (S.D.N.Y. 2004) ............................................................... 5

*Vitello v. Amboy Bus Co.,*
    83 A.D.3d 932, 921 N.Y.S.2d 159 (2d Dep't 2011) ...................................... 15, 17

**Statutes**

NY CLS Work Comp § 2 ............................................................................................ 12

NY CLS Work Comp § 3(2) (number 27) .................................................................. 13

NY CLS Work Comp § 44 .......................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................4, 5

Fed. R. Civ. P. 12(f)....................................................................................................5

**Other**

Centers for Disease Control and Prevention, Frequently Asked Questions
    – Contact Dermatitis and Latex Allergy,
    http://www.cdc.gov/oralhealth/infectioncontrol/faq/latex.htm ................................13

110 Jur.2d Workers' Compensation § 510 (Allergies) ......................................... 3, 14

# I.    INTRODUCTION

Plaintiff Roman Catholic Diocese of Rockville Centre ("the Diocese") is a self-insured employer for workers' compensation. The Diocese seeks indemnity from Defendant General Reinsurance Corporation ("GRC") for the excess portion of the Diocese's workers' compensation loss arising out of a latex allergy injury to one of its employees. The Diocese claims that it has paid more than $500,000 in workers' compensation benefits as a result of a single accident that allegedly occurred during GRC's policy period. After the accident, the employee quickly returned to work as a nurse and was not disabled during GRC's policy period. She continued to work for the Diocese after GRC's policy period ended.

GRC denied the Diocese's indemnity claim under the Policy. The Diocese challenged the denial, and GRC agreed to conduct a further investigation.

Before GRC completed its investigation of the issues raised by the Diocese, the Diocese filed this lawsuit, in which it seeks to recover the loss in excess of its $350,000 retention based on an alleged breach of contract, as well as consequential damages, punitive damages, and attorneys' fees based on an alleged breach of the duty of good faith and fair dealing (i.e., "bad faith"). The complaint alleges that GRC acted in bad faith because it ignored "clear regulatory findings and precedent" and that "conduct such as that exhibited by GRC" shows a "lack of diligence," "slacking off," and "willful rendering of imperfect performance."

The Diocese has alleged an ordinary breach of contract claim under New York law. Because the Diocese has failed to state a bad faith claim or a claim for consequential and punitive damages and attorneys' fees, those claims must be dismissed as a matter of law. In the alternative, the Diocese's claims for consequential damages, punitive damages, and attorneys'

fees must be stricken from the Complaint. GRC denies contractual liability as well, but does not seek dismissal of the breach of contract claim for failure to state a claim.

## II.    ALLEGATIONS OF THE COMPLAINT

GRC issued to the Diocese an Excess Insurance Policy for Self-Insurer of Workers Compensation and Employers Liability, No. X-12133, effective from September 1, 1989 to September 1, 1994 ("Policy"). *See* Dkt. No. 5, ¶ 8 (incorporating the Policy by reference); Declaration of Vincent J. Proto ("Proto Decl."), Ex. A. GRC's Policy applies only to loss in excess of a $350,000 retention. Dkt. No. 5, ¶ 9. The Diocese claims that it has incurred a workers' compensation loss of more than $150,000 in excess of the retention, i.e., more than $500,000 in total loss. Dkt. No. 1 at Ex. A (Plaintiff's Summons with Notice).

An employee of the Diocese, DW, made a workers' compensation claim based on an allergic reaction to latex. Dkt. No. 5, ¶ 10. On October 11, 1995, the New York Workers' Compensation Board issued a Notice of Decision and awarded $12,020 to DW ("1995 Order"). *See* Dkt. No. 5, ¶ 11 (incorporating the 1995 Order by reference); Proto Decl., Ex. B. The 1995 Order stated that from January 28, 1993 to February 13, 1995, DW had "no compensable time lost." Proto Decl., Ex. B. The 1995 Order also stated:

> Accident, notice and causal relationship established to latex allergy. Average weekly wage established at $1,049.23 per payroll. Correct date of accident is 1/27/93. Refer claimant to Office of Vocational Rehab (VESID). Case is continued.

*Id.*

The Diocese sought indemnity under the Policy after its alleged loss exceeded the $350,000 Policy retention. Dkt. No. 5. On July 8, 2015, GRC denied the Diocese's excess loss indemnity claim. Dkt. No. 5, ¶ 16 (incorporating the July 8, 2015 denial letter by reference); Proto Decl. Ex. C (personally identifiable information has been redacted). The denial letter noted

that DW claimed that her allergic reaction to latex rubber was caused by her position as a nurse. Proto Decl., Ex. C. The letter further noted that DW returned to work shortly after her first allergic reaction and continued working for the Diocese for another 18 months until November 24, 1994, which was over two months after the Policy had ended on September 1, 1994. *Id.* GRC concluded that there was no coverage under the Policy because, after the end of the Policy, DW was exposed to the conditions of employment that caused or contributed to the injury. *Id.* The letter correctly stated that under the Policy, in the case of injury by disease, the injury must be "caused or aggravated by the conditions of the employment by the insured" and "the employee's last day of last exposure to those conditions of the employment causing or aggravating such bodily injury by disease must occur during the period this Policy is in force." *Id.*

Subsequently, the Diocese provided GRC with a copy of the 1995 Order, which it argued was inconsistent with GRC's coverage position. Dkt. No. 5, ¶ 18. GRC agreed to conduct a further investigation. Dkt. No. 5, ¶ 19. Nevertheless, the Diocese insisted that GRC's obligation was clear based on three legal authorities, which showed, according to the Diocese, that it was "correct" to conclude that its workers' compensation loss arose from a single accident during GRC's Policy period. *Id.* Specifically, the Diocese cited 110 N.Y. Jur.2d Workers' Compensation § 510 (Allergies), *Bruse v. Holiday Inn*, 16 A.D.3d 785, 790 N.Y.S.2d 765 (3d Dep't 2005), and *Baxter v. Bristol Myers*, 251 A.D.2d 753, 672 N.Y.S.2d 970 (3d Dep't 1998). *See* Dkt. No. 5, ¶ 19. The Diocese alleges that GRC's failure to follow the "clear regulatory findings and precedent" is bad faith. *Id.*

GRC's Policy applies to "loss" in excess of a $350,000 retention that applies per accident for injury by accident and per employee for injury by disease. Proto Decl., Ex. A at Endorsement No. 15. As defined in the Policy, "loss" means "amounts actually paid by the Insured as a self-

insurer under the Workers Compensation Law." *Id.* at Part One, ¶ B. GRC's indemnity obligation applies only to excess loss arising out of the payment of "benefits required of the Insured by the Workers Compensation Law." *Id.* at Part Seven, ¶ D(1). The Policy further provides:

> This insurance applies to losses paid by the Insured as a qualified self-insurer under the Workers Compensation Law for bodily injury by accident or bodily injury by disease including resulting death, provided:
>
> 1.     the bodily injury by accident occurs during the period this policy is in force; or
>
> 2.     the bodily injury by disease is caused or aggravated by the conditions of employment by the Insured. The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force.

*Id.* at Part One, ¶ C. Each "accident is deemed to end 72 hours after the event commences," and "each subsequent 72 hours is deemed to be a separate accident period." *Id.* at Part Four, ¶ D.

GRC has "no duty to investigate, handle, settle or defend any claim, proceeding or suit against the Insured," but it "has the right and shall be given the opportunity by the Insured to associate with the Insured in the defense, investigation, or settlement of any claim, suit or proceeding which appears to involve indemnity by the Insurer." Proto Decl., Ex. A at Part Seven, ¶ B.

The Policy further states clearly that "[t]he only agreements relating to this insurance are stated in this policy." Proto Decl., Ex. A at General Section, ¶ A.

## III.    **ARGUMENT**

### A.    **Applicable Pleading Standards**

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true the factual allegations of the complaint, but need not accept as true legal conclusions, deductions, or opinions couched as factual allegations. *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370,

382 (S.D.N.Y. 2007), *quoting In re NYSE Specialists Sec. Litig.*, No. 06-cv-1038, 503 F.3d 89, 2007 WL 2701341, at *5 (2d Cir. Sept. 18, 2007). In addition, the Court may consider "statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*, *quoting ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

To withstand a motion to dismiss, the complaint must amplify the claim with "some factual allegations . . . to render the claim plausible." *Scottish Re Group*, 524 F. Supp. 2d at 382, *quoting Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Further, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Id.*, *quoting ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)).

Improper damage claims may be dismissed either by a motion to dismiss under Rule 12(b)(6) or a motion to strike under Rule 12(f). *See Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 397 (S.D.N.Y. 2008) (granting motion to dismiss punitive damages claims); *Astor Holdings, Inc. v. Roski*, No. 01-cv-1905, 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) (granting motion to strike claim for attorneys' fees); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004) (granting motion to strike improper damages claim pursuant to Rule 12(f)). *See also Arres v. City of Fresno*, 2011 WL 284971 (E.D. Cal. Jan. 26, 2011) (if improper damage claim cannot be stricken pursuant to Rule 12(f), it must be dismissed pursuant to Rule 12(b)(6)).

**B.**     <u>The Diocese Has Failed to Allege a Claim of Insurance Bad Faith or Any Claim for Consequential and Punitive Damages and Attorneys' Fees</u>

    **1.**     **A Bad Faith Claim Requires Factual Allegations of Tortious Conduct that Would Support a Punitive Damages Claim**

"'New York law … does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" *Int'l Rehabilitative Sciences Inc. v. Gov't Employees Ins. Co.*, No. 12-cv-1225A, 2014 U.S. Dist. LEXIS 161436 at *4 (W.D.N.Y. Aug. 5, 2014), *quoting Harris v. Provident Life & Accident Ins. Co.*, 301 F.3d 73, 81 (2d Cir. 2002).[1] "Where a claim for bad faith is duplicative of a breach of contract claim, it is properly dismissed." *Id.* (citations omitted).

Under New York law, in a breach of contract action, a "complaint does not state a claim for compensatory or punitive damages by alleging merely that the insurer engaged in a pattern of bad-faith conduct." *Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 615, 634 N.E.2d 940, 945, 612 N.Y.S.2d 339, 344 (1994). "[T]o state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract," the plaintiff must plead facts showing that "(1) defendant's conduct [is] actionable as an independent tort; (2) the tortious conduct [was] of the egregious nature set forth in Walker v. Sheldon...; (3) the egregious conduct [was] directed to plaintiff; and (4) it [was] part of a pattern directed to the public generally." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995) (citations omitted). The complaint must allege facts to support the contention that the defendant's "conduct was egregious or fraudulent, or that it evidenced wanton dishonesty so as to imply a criminal indifference to civil obligations directed at the public

---

[1] A Westlaw citation is unavailable for the decision in *Int'l Rehabilitative Sciences Inc. v. Gov't Employees Ins. Co.* A copy of the decision is attached to this brief.

generally." *Flores-King v. Encompass Ins. Co.*, 29 A.D.3d 627, 627, 818 N.Y.S.2d 221, 222 (2d Dep't 2006).

A bad faith claim must allege facts showing breach of "an underlying tort duty sufficient to support a claim for punitive damages." *New York Univ.*, 662 N.E.2d at 770, *citing Rocanova*, 83 N.Y.2d at 614; *Clark-Fitzpatrick, Inc. v. LIRR*, 70 N.Y.2d 382, 389-90, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987). *See also KSW Mech. Servs., Inc. v. Am. Prot. Ins. Co.*, 40 A.D.3d 709, 719, 835 N.Y.S.2d 703, 704 (2d Dep't 2007); *Flores-King*, 818 N.Y.S.2d at 222. Thus, the failure to allege that "the defendant's conduct is actionable as an independent tort" requires the dismissal of the plaintiff's claim for punitive damages. *Int'l Rehabilitative*, 2014 U.S. Dist. LEXIS 161436 at *9-10. Further, "consequential damages may not be recovered against an insurer based solely on allegations that a claim was denied in bad faith." *KSW Mech.*, 835 N.Y.S.2d at 704.

Also, the Diocese cannot state a claim for consequential damages based on the decision of the Court of Appeals of New York in *Bi-Economy Market, Inc. v. Harleysville Ins. Co.*, 10 N.Y.3d 187, 886 N.E.2d 127, 856 N.Y.S.2d 505 (2008). In *Bi-Economy*, the Court of Appeals held that consequential damages are potentially recoverable for breach of contract in "limited circumstances" where such damages "were reasonably contemplated by the parties" at the time of contracting. 886 N.E.2d at 130. Whether consequential damages were reasonably contemplated by the parties depends on "'the nature, purpose and particular circumstances of the contract known by the parties.'" *Id.*, *quoting Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319, 537 N.E.2d 176, 540 N.Y.S.2d 1 (1989). Thus, in *Bi-Economy*, the Court of Appeals held that an insured could seek to recover consequential damages relating to the loss of its business based on

the insurer's alleged breach of its obligation to cover a business interruption loss under a commercial property policy. *Id.* at 131-32.

There is nothing remotely comparable between the business interruption coverage provided in *Bi-Economy* and the indemnity for excess workers compensation loss provided under the Policy here. *See Int'l Rehabilitative*, 2014 U.S. Dist. LEXIS 161436 at *7 (no policy provision "purports to cover consequential damages such as business interruption, loss of revenue or diminution of business value"). There is no provision in the Policy "suggesting any special damages would be available in the event of a breach," and the Diocese does not allege the existence of such a policy provision in its complaint. *See Ripka v. Safeco Ins.*, No. 14-cv-1442, 2015 WL 3397961 at *4 (N.D.N.Y. May 26, 2015). Indeed, the Diocese does not even allege facts showing that consequential damages were reasonably contemplated by the parties when the Policy was issued. In the absence of any policy provision supporting the recovery of special damages, the Diocese's claim for consequential damages must be dismissed as a matter of law. *Id.* at *8-15 (dismissing consequential damages claim in action on homeowner's policy). *See also Int'l Rehabilitative*, 2014 U.S. Dist. LEXIS 161436 at *5-9 (dismissing claim for consequential damages in an action on no-fault auto policies); *Marzan v. Liberty Mut. Ins. Co.*, No. 151184/2013, 2014 WL 3924623 (Sup. Ct. N.Y. Cty. Aug. 8, 2014) (granting motion to dismiss plaintiff's claim for consequential damages).

In addition, attorneys' fees are not recoverable for breach of contract: "It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *New York Univ.*, 662 N.E.2d at 772, *citing Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 416 N.Y.S.2d 559 (1979) (additional citations omitted). Moreover, the plaintiff may not recover

attorneys' fees by alleging that the insurer's denial compelled the insured to file a coverage action. *See Estee Lauder, Inc. v. OneBeacon Ins. Group, LLC*, 31 Misc. 3d 379, 387-88, 918 N.Y.S.2d 825, 831-32 (Sup. Ct. N.Y. Cty. 2011) ("Case law supports the general rule ...that when the insured commences instead its own declaratory judgment action to settle its rights to a defense under a policy, attorneys' fees incurred by the insured (plaintiff) in the prosecution of such a claim are not recoverable under the Mighty Midgets exception"). *See also Chase Manhattan Bank. N.A. v. Each Individual Underwriter*, 258 A.D.2d 1, 4-5, 690 N.Y.S.2d 570, 572-73 (1st Dep't 1999) (attorneys' fees not recoverable by insured that commenced coverage action); *Aetna Cas. & Sur. Co. v. Dawson*, 84 A.D.2d 708, 709, 444 N.Y.S.2d 10, 11-12 (1st Dep't 1981) (insured that commenced arbitration against its insurer could not recover attorneys' fees). Furthermore, the limited exception to the American Rule set forth in *Mighty Midgets* is inapplicable when, as here, the insurer does not owe a duty to defend the insured. *See Chase Manhattan Bank*, 690 N.Y.S.2d at 573; *Aetna Cas.*, 444 N.Y.S.2d at 12.

## 2. The Diocese Alleges a Mere Coverage Dispute

The Diocese alleges that GRC acted in bad faith because it failed to agree with the Diocese that the 1995 Order and the three legal authorities cited by the Diocese were completely dispositive of all coverage issues in this case. As discussed below, the three legal authorities are not on point and the 1995 Order is not dispositive. The 1995 Order is not even a ruling on the coverage issues. But even if the Diocese is correct in its legal position, which GRC denies, a mere coverage dispute cannot form the basis of a bad faith claim. The Diocese has failed to allege anything in support of its bad faith claim other than a disagreement over the interpretation of GRC's Policy and its application to the facts of this case.

Moreover, no sophisticated legal analysis is required to see that substantial coverage issues exist. The Diocese attributes over $500,000 in workers' compensation benefits to a single accident during GRC's Policy period. But it does not deny that the employee returned to work shortly after the January 27, 1993 accident and continued working for the Diocese for another 18 months, until after GRC's Policy period ended. In addition, the 1995 Order stated that the employee had "no compensable lost time" until February 13, 1995, two years after the accident.

A complaint must at least allege facts that make the plaintiff's claim "plausible." *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d at 382, *quoting Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). The Diocese's complaint, however, does not allege any facts that make it plausible to conclude that a single allergic reaction to latex gloves, which did not result in any lengthy absences from work during the 18 month period that DW continued to work for the Diocese after the accident, resulted in $500,000 in workers' compensation loss.

Furthermore, under GRC's Policy, a separate $350,000 retention applies to each accident. The Diocese cannot aggregate its losses from separate accidents and apply them to a single, per accident, retention. As a nurse, DW may have had more than one allergic reaction resulting from contact with latex gloves. The Diocese does not allege that the January 27, 1993 accident was the only accident.

In addition, under the Policy, no single accident can last for more than 72 hours. If the injury was caused by repeated exposure to the conditions of employment over a period of more than 72 hours, then either (a) it is an injury caused by more than one accident or (b) it is injury by disease. In the case of injury by disease, the employee's last exposure to the conditions of employment that caused or contributed to the injury must take place during the Policy period.

In this case, DW continued to work for the Diocese until after GRC's Policy ended. The Diocese does not allege that DW had only one allergic relation to latex gloves during the time she was employed by the Diocese. It also does not allege that her disability was caused by a single event, rather than multiple events or continuous exposure to latex during the period of her employment. The Diocese also does not allege that the employee's disability was caused solely by her latex allergy and not also by other work-related accidents.

Rather than make factual allegations that render its claim under the Policy plausible, the Diocese argues implausibly that applicable New York law and the 1995 Order are completely dispositive of the coverage issues in this case and compel the conclusion that all of its loss was caused by a single accident. As discussed below, there is no merit to the Diocese's purely legal argument. Moreover, regardless of whether it has any possible merit as a breach of contract theory, which GRC denies, it is a completely insufficient basis for a bad faith claim. An insurer's decision to contest a legal theory of coverage is not an act of bad faith; it is an act of prudence and careful claim handling. Accordingly, the Diocese's bad faith claim, including its claims for consequential damages, punitive damages, and attorneys' fees, must be dismissed.

3.    **New York Law Does Not Compel the Conclusion that the Diocese's Loss Was Caused by a Single Accident During GRC's Policy Period**

The Diocese argues that an allergic reaction is an accident, not a disease, as a matter of law, and that the 1995 Order is completely dispositive of the issues in this case. There is no merit to those contentions. Whether a given allergic reaction is an accident or an occupational disease is an issue of both law and fact under New York's workers' compensation law. Also, the issues in this case are issues of contract interpretation and contract application rather than workers' compensation law. The 1995 Order did not address any contract issues.

Under New York workers' compensation law, "occupational disease" means "a disease resulting from the nature of employment and contracted therein." NY CLS Work Comp § 2. The focus of an occupational disease claim "is on the nature of the work, not the nature of the workplace environment." *Johannesen v. New York City Dep't of Hous. Preservation & Dev.*, 84 N.Y.2d 129, 136, 638 N.E.2d 981, 984, 615 N.Y.S.2d 336, 339 (1994). Compensation for occupational disease is recoverable from the *last* employer who employed the employee in the occupation that caused the disease: "The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted." NY CLS Work Comp § 44. The liability can be apportioned to an earlier employer only if the disease was actually contracted during the earlier period of employment. *Id.* ("If, however, such disease, except silicosis or other dust disease and compressed air illness or its sequelae, was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation as provided by this section, may appeal to the board for an apportionment of such compensation among the several employers who since the contraction of such disease shall have employed such employee in the employment to the nature of which the disease was due").

In one case involving an employee in a steel mill, the court treated hearing loss caused by a noisy work environment as an occupational disease and imposed liability on the workers' compensation insurer for the last part of the employment period, based on evidence that the permanent hearing loss occurred during that period. *Lumsden v. Despatch Shops, Inc.*, 5 A.D.2d 242, 171 N.Y.S.2d 189 (3d Dep't 1958). The employee worked first as a riveter in an intensely noisy environment and then as a fitter in a space with less noise intensity. *Id.* at 190. Although the employee suffered hearing loss during the earlier period of employment, the court concluded

that the insurer during the later period was liable, based on medical evidence that the hearing loss did not become permanent until then. *Id.* at 191.

GRC's denial letter treated DW's injury as injury by disease and denied coverage consistent with New York law and the Policy terms because her employment as a nurse and her exposure to the conditions of employment that caused or contributed to her injury continued after the Policy period ended.

The Diocese disputes GRC's coverage position, asserting that an allergic reaction must be an accident as a matter of law. As an unqualified statement of law, that is incorrect. For example, dermatitis can be an allergic reaction. *See* Centers for Disease Control and Prevention, Frequently Asked Questions – Contact Dermatitis and Latex Allergy, http://www.cdc.gov/oralhealth/infectioncontrol/faq/latex.htm. It is specifically recognized under New York's workers' compensation law as an occupational disease if it results from the employee working with substances that cause dermatitis.  NY CLS Work Comp § 3(2) (number 27). New York courts have held that many allergic reactions are occupational diseases, such as: reactions to wool in the manufacture of clothing (*Bichowsky v. Hickey Freeman Co.*, 11 A.D.2d 877, 877-78, 203 N.Y.S.2d 486, 487 (3d Dep't 1960) ("We have previously determined that an asthmatic condition may be occupational in nature when there was exposure to irritants to which claimant was allergic")); cereal and cereal flour in a bakery (*Erazo v. Brandlers Bakery*, 22 A.D.2d 718, 253 N.Y.S.2d 186, 187 (3d Dep't 1964)); and grain dust in a grain elevator (*Lawton v. Port of New York Auth.*, 276 A.D. 81, 92 N.Y.S.2d 714, 718-19 (3d Dep't 1949)).

Furthermore, none of the legal authorities cited by the Diocese in its complaint are dispositive, or even on point. The Diocese cites to a portion of a legal treatise, New York Jurisprudence, which says that "severe allergies or other reactions arising from exposure to

substances in the workplace *may* constitute an accidental injury within the meaning of the Workers' Compensation Law." 110 N.Y. Jur.2d Workers' Compensation § 510 (Allergies) (emphasis added). The cited discussion does not assert that allergic reactions must be treated as accidents and not as occupational diseases. It also does not distinguish accidents from occupational diseases under the workers' compensation law or discuss any of the cases that have held that certain allergic reactions were occupational diseases. Nothing in the cited portion of the treatise provides any support for the Diocese's contention.

The Diocese also cites *Bruse v. Holiday Inn*, 16 A.D.3d 785, 790 N.Y.S.2d 765 (3d Dep't 2005), which involved a chef who went into anaphylactic shock because of his occupational exposure to shellfish. The court concluded that the event was a compensable accident because it precipitated, aggravated, or accelerated a preexisting allergy that had been less severe before the chef worked in the restaurant. *Id.* at 766-67. The court did not discuss the distinction between accident and occupational disease or explain the grounds for the appeal. Also, the dispute concerned compensability rather than the date of injury.

The Diocese also cites *Baxter v. Bristol Myers*, 251 A.D.2d 753, 672 N.Y.S.2d 970 (3d Dep't 1998), which involved an employee who had allergic reactions to chemical fumes over a four-year period culminating in two severe episodes in the final year. The court held that although the employee had a preexisting pulmonary condition, the work environment aggravated her condition and culminated in the first severe episode, which was a compensable accident. As in *Bruse*, the dispute concerned compensability rather than the date of injury, and the court did not discuss the distinction between accident and occupational disease.

The Diocese also argues that the 1995 Order is dispositive of the coverage issues in this case and suggests that GRC's coverage position is a "collateral attack" on the order and an

attempt to relitigate the workers' compensation claim. Dkt. No. 5, ¶¶ 12 & 20. There is no merit to these contentions. GRC does not deny that the Diocese is liable to DW under the 1995 Order, and it does not seek to "relitigate" DW's workers' compensation claim against the Diocese. As an authorized self-insured employer for workers' compensation (Dkt. No. 5, ¶7), the Diocese will continue to be statutorily liable under the 1995 Order and any subsequent orders of the Workers' Compensation Board, regardless of whether it has a valid breach of contract claim against GRC under the Policy.

Further, GRC is not collaterally estopped from litigating the coverage issues in this case, which include the number and dates of injury by accident and injury by disease and the amount of loss, if any, in excess of the applicable retentions. Those issues were not presented to the Workers' Compensation Board, litigated by the parties to that proceeding, or decided by the Board. GRC was neither a party to the workers' compensation action nor in privity with the Diocese as to any of those issues. Collateral estoppel precludes a "party or those in privity" from relitigating "an issue clearly raised in a prior action or proceeding and decided against that party or those in privity." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984). The doctrine applies only when (1) "the identical issue was necessarily decided in the prior action and is decisive in the present action" and (2) the precluded party "had a full and fair opportunity to contest the prior determination." *Vitello v. Amboy Bus. Co.*, 83 A.D.3d 932, 933, 921 N.Y.S.2d 159, 160 (2d Dep't 2011), *citing D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990).

Collateral estoppel does not apply in this case for at least three reasons. First, the issues decided by the 1995 Order are not identical to the coverage issues in this case. The issues decided by the 1995 Order were statutory and concerned workers' compensation liability of the

Diocese to DW; the issues in this case are contractual and concern alleged excess indemnity obligations of GRC to the Diocese. *See Auqui v. Seven Thirty One Ltd. P'ship*, 22 N.Y.3d 246, 3 N.E.3d 682, 684, 980 N.Y.S.2d 345 (2013) (no identity of issues between disability determination by the Workers' Compensation Board and damages issue in personal injury action). The 1995 Order did not mention GRC's Policy or its terms or discuss the application of the Policy language to the facts of this case.

Second, GRC was not a party to the workers' compensation proceedings and was not in privity with the Diocese. Privity requires that the party sought to be precluded and the litigating party have a "relationship that would justify preclusion," and requires a determination that "preclusion, with its severe consequences, would be fair under the particular circumstances." *Buechel v. Bain*, 97 N.Y.2d 295, 304-05, 766 N.E.2d 914, 920, 740 N.Y.S.2d 252, 258 (2001), *citing Matter of Juan C. v. Cortines*, 89 N.Y.2d 659, 667, 679 N.E.2d 1061, 1065, 657 N.Y.S.2d 581, 585 (1997). "Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Id*. Privity is lacking because the Diocese and GRC have divergent interests in the issues that were litigated, such as the date of injury. *See San Francisco BART Dist. v. Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055, 1068-70 (N.D. Cal. 2015) (excess insurer for a self-insured employer for workers' compensation is not bound by a determination made in a workers' compensation proceeding to which it was not a party because there was no privity); *Kaiser Found. Hosps. v. N. Star Reinsurance Corp.*, 90 Cal. App. 3d 786, 793 (1979) (insured and primary carrier cannot "ride roughshod over the rights of the excess carrier" by unilaterally stipulating to a date of loss); *Hartford Acc. & Indem. Co. v. Michigan Mut. Ins. Co.*, 61 N.Y.2d 569, 574, 462 N.E.2d 608,

610, 475 N.Y.S.2d 267, 269 (1984) (primary and excess carriers may have different interests, and a primary carrier owes a duty of good faith to the excess carrier).

Finally, even assuming identity of issues and privity, decisions by the Workers' Compensation Board are not entitled to collateral estoppel effect if the issues decided were not actually disputed and litigated. *Vitello*, 921 N.Y.S.2d at 160; *Price v. Park Ave. Plaza Owner LLC*, 2013 WL 425264 (Sup. Ct. N.Y. Cty. Jan. 17, 2013). There is no evidence that the issues decided by the Board in this case, other than the issue of compensability, were actually disputed.

In sum, none of the Diocese's legal arguments support its contentions or resolve the coverage dispute between the parties about the number and dates of injury and the amount of loss, if any, in excess of the applicable retentions. Even more so, they do not support the Diocese's contention that GRC acted in bad faith.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, GRC's motion to dismiss the Diocese's bad faith claim and its claims for compensatory damages, punitive damages, and attorneys' fees should be granted. In the alternative, its motion to strike those damage claims should be granted.

Respectfully submitted,

BUDD LARNER, P.C.

By: _____
Vincent J. Proto (VP-7016)
260 Madison Avenue, 18th Floor
New York, New York 10016
(646) 670-5702

Attorneys for Defendant
General Reinsurance Corporation

Dated: April 18, 2016



International Rehabilitative Sciences Inc., d.b.a. RS Medical, as assignee of Anderson, Charles, et al., Plaintiffs, v. Government Employees Insurance Company, Defendants.

## 12CV1225A

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

### 2014 U.S. Dist. LEXIS 161436

August 5, 2014, Decided
August 5, 2014, Filed

**SUBSEQUENT HISTORY:** Adopted by, Motion granted by, Dismissed by, in part Int'l Rehabilitative Scis., Inc. v. Gov't Emples. Ins. Co., 2014 U.S. Dist. LEXIS 160682 (W.D.N.Y., Nov. 7, 2014)
Motion denied by, Without prejudice Int'l Rehabilitative Scis., Inc. v. Gov't Emples. Ins. Co., 2015 U.S. Dist. LEXIS 137744 (W.D.N.Y., Oct. 8, 2015)

**COUNSEL:** [*1] For International Rehabilitative Sciences, Inc., doing business as RS Medical, as assignee of Elizabeth A. Altemoos-Bell, et al, Plaintiff: Jeanne M. Vinal, LEAD ATTORNEY, Vinal & Vinal, Buffalo, NY.

For Government Employees Insurance Company, doing business as GEICO, Defendant: Barry I. Levy, Justin A. Calabrese, Michael A. Sirignano, Michael P. Versichelli, Rivkin, Radler LLP, Uniondale, NY.

**JUDGES:** Hugh B. Scott, United States Magistrate Judge.

**OPINION BY:** Hugh B. Scott

## OPINION

### Report & Recommendation

Before the Court are: the defendant's motion to dismiss (Docket No. 37) and the defendant's motion to compel (Docket No. 60).[1]

> 1   Discovery issues raised in the defendants' motion to compel are resolved in a separate Decision & Order.

### Background

The plaintiff, International Rehabilitative Sciences Inc., d.b.a. RS Medical (referred to as "RS Medical") brought this action as the assignee of 154 individuals. The plaintiff asserts that each of the assignors was covered by a policy issued by the defendant, Government Employees Insurance Company ("GEICO"). Each of the assignors executed an assignment of benefits granting their no-fault rights pursuant to their respective automobile insurance polices to RS Medical for the purposes [*2] of collecting payment for medical services rendered after motor vehicle accidents. RS Medical alleges that it provided durable medical equipment -- an interferential stimulator -- to each of the assignors pursuant to prescriptions issued by medical providers treating the assignors for injuries sustained in various motor vehicle accidents. (Docket No. 34 at ¶¶ 14-16). RS Medical claims that GEICO failed to pay for durable medical equipment provided to each of the assignors as part of their treatment for injuries sustained in the various accidents. (Docket No. 34 at ¶¶ 8-12). The plaintiff asserts that GEICO's failure to pay for the durable medical equipment constitutes a breach of contract. (Docket No. 34 at ¶¶ 13-44). As a second cause of action, the plaintiff also asserts that GEICO's failure to pay for the durable medical equipment constitutes bad faith in pursuing examinations under oath pursuant to Regulation 68 promulgated under the New York State Insurance Law. Rule 68 provides that:

> An insurer shall pay benefits for any element of loss, other than death benefits,

directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible [*3] for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay benefits directly to providers of health car services as covered under section five thousand one hundred two (a)(1) of the Insurance Law.

11 NYCRR §65-3.11.

Regulation 68 permits an insurance carrier to obtain verification of a claim for benefits by taking an examination under oath of the claimant. The plaintiff contends that any such examinations under oath, pursuant to the regulation, must be "held at a place and time reasonably convenient to the applicant." 11 NYCRR §65-3.5(e). The plaintiff asserts that GEICO noticed the Regulation 68 examinations to take place at a law office in Woodbury, New York. (Docket No. 34 at ¶¶ 45-50). RS Medical alleges that GEICO only began requesting the examinations under oath after RS Medical began exercising its rights pursuant to Rule 68 and was successful in several arbitrations against GEICO. (Docket No. 34 at ¶¶ 52-55). RS Medical, which is located in Vancouver, Washington, argues that there was no need to require the examination under oath 2000 miles away in Woodbury, New York. (Docket No. 34 at ¶ 58).

As a third claim, the plaintiff seeks consequential damages including damages related [*4] to the reduction of revenue and the increase in cost of doing business based upon GEICO's alleged failure to make timely payments of the plaintiff's claims. (Docket No. 34 at ¶¶ 67-76).

**Motion To Dismiss**

The defendant has moved to dismiss the second and third causes of action pursuant to Rule 12 of the Federal Rules of Civil Procedure. In addition, the defendant seeks to dismiss the plaintiff's claim for punitive damages. Finally, GEICO argues that the plaintiff cannot maintain its claim that GEICO is estopped from challenging the plaintiff's billing practices. (Docket No. 37).

**Bad Faith Claim**

The defendants argue that the plaintiff's second cause of action, alleging bad faith, is redundant, and must be dismissed under New York law. (Docket No. 38 at page 3). Under New York law, "implicit in contracts of insurance is a covenant of good faith and fair dealing." Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,

10 N.Y.3d 187, 194, 856 N.Y.S.2d 505, 886 N.E.2d 127 (2008) (citing New York Univ. v. Continental Ins. Co.., 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995)). However, "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir.2002). Where a claim for bad faith is duplicative of a breach of contract claim, it is properly dismissed. See Texas Liquids Holdings, LLC v. Key Bank Nat'l Assoc., 2007 U.S. Dist. LEXIS 23002, 2007 WL 950136, at *2 (S.D.N.Y. March 27, 2007).

Because the plaintiff's bad faith claim is [*5] based upon the same operative facts as the plaintiff's breach of contact claim, it must be dismissed. The defendant's motion to dismiss the second cause of action should be granted.

**Consequential Damages Claim**

The defendant also seeks to dismiss the plaintiff's claim for consequential damages as set forth in the third cause of action. (Docket No. 38 at page 6). The plaintiff again points to Bi-Economy as the authority supporting the plaintiff's claim for consequential damages in this case. Again, the plaintiff's reliance upon Bi-Economy is misplaced. In Bi-Economy, the Court of Appeals discussed the standard for a consequential damages claim under New York law:

It is well settled that in breach of contract actions "the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." ... Special, or consequential damages, which "do not so directly flow from the breach," are also recoverable in limited circumstances ... In [Kenford v County of Erie, 73 N.Y.2d 312, 537 N.E.2d 176, 540 N.Y.S.2d 1 (1989)] we stated that "[i]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, [*6] such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." ... We later explained that "[t]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was

made." ... It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, "[i]t is only necessary that loss from a breach is foreseeable and probable" ... . To determine whether consequential damages were reasonably contemplated by the parties, courts must look to "the nature, purpose and particular circumstances of the contract known by the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."

Bi-Economy, 10 N.Y.3d at 192-193. The plaintiff's argument that GEICO's no-fault auto insurance policies contemplated consequential damages (including loss of revenue and diminution of business value) flowing to a third-party payee based upon untimely payment of claims (Docket No. 50 [*7] at page 9) is not persuasive.[2] Unlike the insurance contract at issue in Bi-Economy, the plaintiff does not point to any provision in GEICO's no-fault insurance policies underlying the instant claims which purports to cover consequential damages such as business interruption, loss of revenue or diminution of business value incurred by a third-party payee. A similar claim was rejected in State Farm Mut. Ins. Co. v Anikeyeva, 35 Misc. 3d 1203[A], 950 N.Y.S.2d 726, 2012 NY Slip Op 50542[U] (Sup. Ct. Nassau Cty., 2012):

[The defendant] seek damages for the loss of defendant Anikeyeva's business, allegedly caused by the State Farm's failure to pay no-fault benefits under its policies. Consequential damages are recoverable for breach of contract in limited circumstances, where such damages were within the contemplation of the parties as the probable result of a breach at the time of, or prior to, contracting (Bi-Economy Market, Inc v Harleysville Ins Co of New York, 10 NY3d 187, 192, 886 N.E.2d 127, 856 N.Y.S.2d 505 [2008], citing Kenford Co v County of Erie, 73 NY2d 312, 319, 537 N.E.2d 176, 540 N.Y.S.2d 1 [1989]). Defendants were not yet on the scene at the time that the subject insurance policies were issued by State Farm to its policy holders. Therefore, there could have been no contemplation of defendants' consequential damages at the time the policies were issued. In short, de-

fendants simply have no cause of action for consequential damages based upon the allegations of State Farm's multiple breaches of contract. [*8] Accordingly dismissal of the second counterclaim for consequential damages must be granted.

Anikeyeva, 35 Misc. 3d 1203[A], 950 N.Y.S.2d. 726, 2012 NY Slip Op 50542[U] at *5-6. See also Genovese v. State Farm Mut. Auto. Ins. Co., 106 A.D.3d 866, 965 N.Y.S.2d 577 (2d Dept.,2013)(The Supreme Court properly granted motion to dismiss the second cause of action, which sought consequential damages for breach of the no-fault insurance benefits policy). RS Medical was not a party to the no-fault insurance contracts at issue. The plaintiff does not allege, and has not demonstrated that it would be possible for them to allege in good faith, that consequential damages to third-party payees was contemplated by the parties at the time of the issuance of the respective policies.

2  The plaintiff asserts that in "addition to the consequential damages suffered by the medical provider, there are profound and serious consequential damages suffered by each of the numerous injured parties who are affected in their ability to get treatment, to get their lost wages paid, and the health cost in not getting treatment and the worry and strain of having the no fault bills outstanding and their ability to prove the serious injury threshold due to the inability to get treatment, and the decreased value in their personal injury cases due to the inability to get treatment, as well as the [*9] compromise of the patient-provider relationship." (Docket No. 50 at page 11). The Court notes that these allegations are not contained in the complaint. Further, the plaintiff has not demonstrated that the assignors assigned anything more to RS Medical than the right to seek payment for the durable medical equipment. Finally, the plaintiff cites to no authority supporting the proposition that these far-reaching consequential damages were within the contemplation of the parties as the probable result of a breach at the time of, or prior to, contracting for the no-fault insurance at issue.

Based on the above, it is recommended that plaintiff's claim for consequential damages, as stated in the third cause of action, be dismissed.

## Punitive Damages Claim

In Rocanova v. Equitable Life Assur. Socv. of U.S., 83 N.Y.2d 603, 613-17, 634 N.E.2d 940, 612 N.Y.S.2d

339 (1994), the New York Court of Appeals held that damages arising from a breach of contract will ordinarily be limited to contract damages but that punitive damages may be recoverable if necessary to vindicate a public right. Rocanova, 83 N.Y.2d at 613. In pleading such a claim for punitive damages, the New York law requires allegations that: 1) the defendant's conduct was actionable as an independent tort; 2) the tortious conduct must be egregious as in "gross," "morally [*10] reprehensible,"' or of "such wanton dishonesty as to imply a criminal indifference to civil obligations;" 3) the conduct must be directed to plaintiff; and 4) it must be part of a pattern directed at the public generally. New York University v. Continental Ins. Co., 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) (internal citations omitted).

The plaintiff's complaint fails to state a claim that the defendant's conduct is actionable as an independent tort. Thus, the plaintiff's claim for punitive damages in this case must be dismissed.

### Estoppel Claim

The plaintiff's complaint sets forth allegations contending that the defendants cannot challenge the plaintiff's billing practices pursuant to the doctrine of collateral estoppel. RS Medical alleges that $2,495.00 is the "usual and customary rate" of the interferential stimulator unit. The plaintiff contends in the complaint that because GEICO had paid this rate in the past, it cannot challenge the rate in this action. (Docket No. 34 at ¶ 77). Further, the plaintiff's complaint asserts that this rate was "adjudicated" because GEICO paid that rate after prior arbitration decisions. (Docket No. 34 at ¶¶ 79-80). The defendants argue that the majority of arbitration decisions between the parties "actually denied the plaintiff's claims [*11] for reimbursement." Further, GEICO states that the issue which was the subject of the arbitrations was that of "medical necessity" of the interferential stimulation unit -- not pricing. (Docket No. 38 at page 14). The defendant requests that the Court reject the plaintiff's claim that collateral estoppel applies under these circumstances. (Docket No. 38 at page 15).

Under New York law, collateral estoppel, or issue preclusion applies "'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." Fludd v. Fischer, 568 Fed. Appx. 70, 2014 WL 2535247 (2d. Cir. 2014) citing LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir.2002) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999)). The burden of proof on the "full and fair opportunity" requirement rests with the party opposing collateral estoppel. See Schwartz

v. Pub. Adm'r of Cnty. of Bronx, 24 N.Y.2d 65, 73, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969).

The plaintiff's response to the instant motion does not respond in any way to the portion of the defendant's motion which attacks the plaintiff's assertion of collateral estoppel. Inasmuch as the plaintiff has not disputed the defendant's representation that the pricing of the interferential stimulators was not the subject of any prior litigation, the record currently before the Court does [*12] not support the application of collateral estoppel on this issue.

### Conclusion

It is recommended that the defendant's motion to dismiss be GRANTED consistent with the above and that the defendant be directed to file an answer to the remaining claims in the complaint.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolek v. Canadair, Ltd.., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed

findings and recommendations to which objection is made and the basis for such objection [*13] and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection**.

So Ordered.

/s/ Hugh B. Scott

United States Magistrate Judge

Western District of New York

Buffalo, New York

August 5, 2014



Copyright 2016 SHEPARD'S(R) - 2 Citing references

**Int'l Rehabilitative Scis. Inc. v. Gov't Emples. Ins. Co., 2014 U.S. Dist. LEXIS 161436 (W.D.N.Y. Aug. 5, 2014)**

Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

**SHEPARD'S SUMMARY**

**Unrestricted *Shepard's* Summary**
⬦**No negative subsequent
appellate history.**
**Citing References: None**

**PRIOR HISTORY**   ( 0 citing references )

> *(CITATION YOU ENTERED):*
> *Int'l Rehabilitative Scis. Inc. v. Gov't Emples. Ins. Co.*, 2014 U.S. Dist. LEXIS 161436 (W.D.N.Y. Aug. 5, 2014)

**SUBSEQUENT APPELLATE HISTORY**   ( 2 citing references )

1.  **Adopted by, Motion granted by, Dismissed by, in part:**
    *Int'l Rehabilitative Scis., Inc. v. Gov't Emples. Ins. Co.*, 2014 U.S. Dist. LEXIS 160682 (W.D.N.Y. Nov. 7, 2014)

2.  **Motion denied by, Without prejudice by:**
    *Int'l Rehabilitative Scis., Inc. v. Gov't Emples. Ins. Co.*, 2015 U.S. Dist. LEXIS 137744 (W.D.N.Y. Oct. 8, 2015)